**I.U. NORTH AMERICA, INC.,
et al., Plaintiffs,**

v.

**A.I.U. INSURANCE COMPANY,
et al., Defendants.**

**C.A. No. 01C–02–007 MJB.**

Superior Court of Delaware,
New Castle County.

Submitted: Feb. 3, 2006.
Decided: May 2, 2006.

---

Theodore A. Keyes, Valerie Sheaffer, Schulte Roth & Zabel, L.L.P., New York City, for Plaintiff Quigley Company, Inc.; John E. Heintz, Richard D. Martindale, Jennifer A. Brennan, Gilbert Heintz & Randolph, L.L.P., Washington, DC, for Plaintiff Pfizer, Inc.; John E. James, Richard L. Horwitz, Potter Anderson & Corroon, L.L.P., Wilmington, DE, for Plaintiffs.

James A.A. Pabarue, Thaddeus J. Weaver, Christie Pabarue Mortensen & Young, Philadelphia, PA; Dade D. Werb, Decollo and Werb, P.A., Newark, DE, for Defendant CGU Insurance Company.

## *OPINION*

BRADY, J.

### *Procedural History*

This is an action for breach of contract and for declaratory judgment and ancillary relief to determine the responsibility for payment of liabilities incurred as a result of numerous claims and actions seeking to recover damages including, but not limited to, bodily injuries, personal injuries, mental injuries, mental anguish, emotional distress, shock, disability, injury to feelings of others and humiliation allegedly due to exposure to asbestos resulting from the conduct of the Plaintiffs. Numerous parties have been in this litigation. The remaining Plaintiffs are Pfizer, Inc. and Quigley Company, Inc. The two entities join each other in this motion and so will be referred to hereinafter as "Pfizer/Quigley." The remaining Defendant is CGU

Insurance Company[1] ("CGU"). All other parties have been dismissed from this case.[2] Pfizer/Quigley filed a Motion for Summary Judgment based on the record currently before the Court. This is the Court's decision on the Motion.

### Standard of Review

Summary judgment may be granted where the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[3] "In determining whether there is a genuine issue of material fact, the evidence must be viewed in a light most favorable to the nonmoving party."[4] When taking all of the facts in a light most favorable to the nonmoving party, if there remains a genuine issue of material fact requiring trial, summary judgment may not be granted.[5] "[T]he Court may award summary judgment in favor of a nonmoving party if it finds that the material facts are undisputed and that the nonmoving party is entitled to judgment as a matter of law."[6] Summary Judgment may also be granted in favor of the nonmoving party if no issues of fact remain after the decision on Summary Judgment. "The form of pleadings should not place a limitation upon the court's ability to do justice."[7]

### Background

This case involves the interpretation of a Settlement Agreement between Pfizer/Quigley and CGU. On March 25, 1999 Pfizer/Quigley and CGU signed a Settlement Agreement to resolve outstanding insurance coverage litigation between them. The Settlement Agreement ended numerous disputes between Pfizer/Quigley

1. CGU Insurance Company intervened in this action as parent of Commercial Union Insurance Company, and as successor to Employers' Liability Assurance Corporation, Limited, Employers Commercial Union Insurance Company of America, Employers Commercial Union Insurance Company, and Employers' Surplus Lines Insurance Company.

2. The original Plaintiffs included: Certainteed Corporation, Dana Corporation, I.U. North America, Inc., Nosroc Corporation, Pfizer, Inc., Quigley Company, Inc., Shook & Fletcher Insulation Company, and United States Gypsum Company, Inc. The original Defendants included: AIG Europe (UK) Limited on behalf of New Hampshire Insurance Company LTD, A.I.U. Insurance Company, American Home Assurance Company, American Re–Insurance Company, Argonaut Insurance Company, Employers Mutual Casualty Company, Federal Insurance Company, Government Employees Insurance Company, General Reinsurance Corporation, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, North Star Reinsurance Corporation, St. Paul Fire and Marine Insurance Company, and Stonewall Insurance Compa-

ny. Parties that intervened as Defendants in the action were: Allianz Underwriters Insurance Company, American Bankers Insurance Company of Florida and Old Republic Insurance Company, Centennial Insurance Company, CGU Insurance Company, Federal Insurance Company, Allstate Insurance Company, solely as successor-in-interest to Northbrook Excess and Surplus Insurance Company, formerly known as Northbrook Insurance Company, Everest Reinsurance Company, Lumbermans Mutual Casualty Company, Westport Insurance Company, Highlands Insurance Company and Stonewall Insurance Company, Inc (Stonewall briefed and argued this Motion, but settled while decision was pending). The only parties that remain in this case are those referenced in the body of the opinion.

3. Super.Ct.Civ.R. 56(c).

4. *Muggleworth v. Fierro*, 877 A.2d 81, 83–84 (Del.Super.2005).

5. *Gutridge v. Iffland*, 889 A.2d 283 (Del.2005).

6. *Liggett Group, Inc. v. Affiliated FM Ins. Co.*, 2001 WL 1456774 (Del.Super.).

7. *Bank of Delaware v. Claymont Fire Co. No. 1*, 528 A.2d 1196 (Del.1987).

and CGU relating to the existence and scope of coverage under policies issued to Pfizer/Quigley by CGU predecessor companies from 1964 through 1971. The issue presented in this Motion for Summary Judgment is whether, under the terms of the Settlement Agreement, CGU is required to pay amounts, which Pfizer/Quigley has paid to tort claimants.

A brief examination of the litigation history of asbestos is necessary to put this matter in context. Since the 1960s, companies that produced, distributed, or installed asbestos-containing materials have faced tort suits brought by claimants alleging bodily injury caused by these materials. In a joint effort to resolve numerous coverage disputes that arose as a result of the asbestos-related claims, Pfizer/Quigley and other asbestos producing parties established a joint-defense organization known as the Asbestos Claims Facility ("ACF"), to administer, defend and settle asbestos related-claims as the exclusive agent of all of its members. Producing parties and many of their insurers, not including CGU, signed the document creating such a structure, termed the Wellington Agreement, on June 19, 1985. The Wellington Agreement eliminated the need for cross-claims and contribution claims among producer parties by establishing a mechanism to share liability payments through a producer allocation formula that determined the amount each producer party would contribute to each settlement. All payments were made by the ACF, not individual members, so claimants could not discern how much each producer party contributed to each claim settlement.

In 1988 the ACF was dissolved and many of the manufacturers, including Pfizer/Quigley, signed what is termed the "Producer Agreement," which established another organization, The Center for Claims Resolution, to serve the same pur-

poses as the previous ACF. The CCR continued to negotiate settlements of behalf of all of its members as a group, obtained releases from all CCR members in conjunction with every settlement, made settlement payments in a single lump sum, and did not disclose to claimants how much each CCR member contributed to each settlement. Within the Producer Agreement, the manufacturers also established a producer allocation formula to allocate claims among its membership. Unlike the Wellington Agreement, no insurers were a party to the Producer Agreement. The CCR continued to handle, administer, defend and settle asbestos related claims for the CCR members until February 2001.

Beginning in 1993, Pfizer/Quigley engaged in litigation with their insurance carriers regarding insurance coverage for their asbestos-related liabilities. Pfizer/Quigley resolved the litigation by entering into settlement agreements with each of their insurer parties, including CGU. The settlement agreements established terms and conditions under which each insurer party agreed to make liability payments and pay allocated expenses associated with the producer parties' asbestos-related bodily injury liabilities.

As part of those agreements, CGU expressly delegated to Pfizer/Quigley the exclusive authority and discretion to administer, evaluate, settle, pay or defend the Asbestos–Related Bodily Injury Claims against Pfizer/Quigley.

Starting in 2000, certain CCR members defaulted on their obligation to pay a portion of asbestos related claims that the CCR had previously settled. The CCR sent payments to the Claimants that reflected the amount of the settlement less the expected contributions of the defaulting members. The differences in these amounts are referred to in this case as "Shortfall Amounts." Some of those

claimants who were not paid in full brought suit to enforce the settlement agreements with the CCR against the non-defaulting members, including Pfizer/Quigley. Pfizer/Quigley and the other members of the CCR were found jointly and severally liable for the Shortfall Amounts in multiple cases.[8] In some instances, the basis for their liability was the manner in which the settlements with the claimants were structured and Pfizer/Quigley and the other producer parties were forced to pay the amount the defaulting members of the CCR would have contributed. These are termed the "Enforcement Actions."[9]

In light of these joint and several judgments, the remaining CCR members entered into new settlement agreements with claimants who were not paid in full due to the defaulting CCR members. These amounts are referred to in this case as "Resettlement Agreements."

The remaining category, termed the "Direct Billing" charges, comprise those settlement amounts the CCR had already paid to tort claimants on behalf of members who would later default on their share of payment obligations. Those amounts were then re-allocated to the remaining CCR members pursuant to the producer allocation formula contained in the Producer Agreement.

CGU has declined to pay these amounts; citing the definition of Asbestos–Related Bodily Injury Claims in the Settlement Agreement and claiming these obligations fall outside the scope of their responsibility to pay under the terms of the Settlement Agreement. Pfizer/Quigley now brings this action against CGU under the Settlement Agreement to recover the amounts Pfizer/Quigley paid, previously referred to as Enforcement Actions, Resettlement Amounts and Direct Billing.

The crux of the dispute is what is included in "Asbestos–Related Bodily Injury Claims" and to what extent CGU is obligated to reimburse Pfizer/Quigley for them. Pfizer/Quigley argues it means any amounts for which they have become liable, under any agreement or ruling, regardless of whether the obligations stem from the failure of defaulting members of CCR to contribute. CGU argues that they are only obligated to reimburse for the amounts Pfizer/Quigley were individually responsible for paying. They argue Pfizer/Quigley's payment of "Shortfall Amounts" was not payment of "Asbestos–Related Bodily Injury Claims," but payment of the contractual shares of the defaulting members of the CCR, and because those members of the CCR were not parties to the settlement agreements between Pfizer/Quigley and CGU, CGU is not liable for those amounts. CGU also argues that the Wellington Agreement, appended and incorporated by reference Settlement Agreement, limits this obligation to pay such amounts.

### Applicable Law

First, the Court will address the argument proffered by CGU that the doctrine of *contra proferentum* should be applied because it was in an unequal bargaining position with Pfizer/Quigley. *Contra proferentum* is a doctrine of last resort that may be applied by the Court to construe language of a contract against the drafter.[10] The rule is not appropriately

---

**8.** *See e.g. Berlier v. A.P. Green Industries, Inc. et al*, 815 So.2d 39 (La.2002); *Erhardt v. Certainteed Corp.*, N.Y.Supr., Index No. 1194/01, Freedman, J. (October 15, 2002).

**9.** At oral argument both Pfizer/Quigley and CGU represented to the Court that Pfiz-

er/Quigley were defendants in all tort actions which form the basis of this dispute.

**10.** *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Company*, 498 A.2d 1108, 1114 (Del. 1985).

applied to situations where an agreement resulted from a series of negotiations between experienced drafters.[11] "Where all parties to a contract are knowledgeable, there is no reason for imposing sanctions against the party who drafted the final provision."[12]

CGU is a sophisticated insurance company who was represented by counsel throughout the negotiation of the Settlement Agreement as reflected in Section 8:

> This Agreement was negotiated by the Parties hereto at arm's length, and each Party received advice from independent legal counsel. In the event of any dispute arising in connection with this Agreement, no language or wording herein shall be construed against any Party because of the identity of the drafter or the fact that CGU is an insurance company.

CGU was free not to enter into the Settlement Agreement if the terms were not in accord with CGU's interests. The Settlement Agreement expressly addressed and prohibited an argument of *contra proferentum* by its terms. All parties to the settlement agreement were experienced and knowledgeable in the subject matter. There is no factual basis in the record to apply *contra proferentum*. Therefore, the Court will not construe the language of the settlement agreement against either party.

■ Both CGU and Pfizer/Quigley urge the Court to consider facts outside the four corners of the documents. In argument, CGU refers to statements made at previous negotiations, from which they seek to have the Court determine the understanding of the parties. Pfizer/Quigley claims that only a portion of the Wellington Agreement was incorporated into the Settlement Agreement. The general rule of contract interpretation for integrated agreements implicates the parol evidence rule. "The parol evidence rule excludes evidence of additional terms to a written contract, when that contract is a complete integration of the agreement of the parties."[13] "If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."[14]

Both Pfizer/Quigley and CGU argue the Settlement Agreement is an unambiguous contract that supports their theory in the case. "Unambiguous written agreements should be enforced according to their terms, without using extrinsic evidence to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity."[15] "Contract language is not ambiguous simply because the parties disagree on its meaning."[16] Words must be given their ordinary meaning and should not be tortured to impart ambiguity where none exists.[17] The Court is not bound by the parties' claims that the Settlement Agreement unambiguously supports each of their positions.[18]

**11.** *Id.*

**12.** *Id.*

**13.** *Husband (P.J.O.) v. Wife (L.O.)*, 418 A.2d 994 (Del.1980).

**14.** *Eagle Indus., Inc. v. DeVilbiss Health Care*, 702 A.2d 1228, 1232 (Del.1997).

**15.** *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 210 (3d Cir.2005) (internal citations omitted), *citing Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.* 702 A.2d at 1232.

**16.** *E.I. duPont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del.1997).

**17.** *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del.1992).

**18.** *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d at 1231.

The Court finds the Settlement Agreement to be unambiguous. Additionally. After review of the caselaw and hearing argument, this Judge concurs with the previous ruling that these documents are fully integrated and reflect the entirety of the agreement between the parties.[19] Therefore, the parol evidence rule requires that the terms of the Settlement Agreement govern the relationship between Pfizer/Quigley and CGU.

It now becomes the responsibility of the Court to interpret and apply the provisions of the documents.

A single clause or paragraph of a contract must be read in the context of the remainder of the agreement, not in isolation.[20] The Pfizer/Quigley/CGU Settlement Agreement incorporates the Wellington Agreement by reference in section 3.3. The Court must determine how the terms of the Wellington Agreement affect the liabilities of the parties because "[A] court must interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions of the instrument when read as a whole." [21]

The general rule of contractual interpretation referred to as the doctrine of incorporation by reference is:

Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by the reference as a part of the contract and therefore, may properly be considered in the construction of the contract. Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties.[22]

Delaware courts have adopted this rule.[23]

■ Section 3.3 of the Pfizer/Quigley/CGU Agreement incorporates the Wellington Agreement by reference:

A copy of the Wellington Agreement is attached hereto as Attachment B. All terms and conditions of the Wellington Agreement are incorporated herein by reference to the extent that they are not inconsistent with this Agreement. As to any conflict between the terms of this Agreement and the Wellington Agreement, the terms of this Agreement will govern . . .

This section must be read in conjunction with section 3.0 of the Settlement Agreement, which states CGU will only be obligated to pay Pfizer/Quigley for Asbestos–Related Bodily Injury Claims to the extent it would have been obligated if it had been a signatory to the Wellington Agreement:

CGU will make Liability Payments and pay Allocated Expenses for Asbestos–Related Bodily Injury Claims to the extent that CGU would have been obligated to do so had CGU became [sic] a Signatory to the Wellington Agreement as to Pfizer and Quigley, provided that (a) Liability Payments and Allocated Ex-

19. *Motion for Protective Order Hearing Transcript* at 53.

20. *Cheseroni v. Nationwide Mutual Insurance Co.,* 402 A.2d 1215, 1217 (Del.Super.Ct.1979).

21. *Council of Dorset Condominium Apts. v. Gordon,* 801 A.2d 1 (Del.2002).

22. *Star States Development v. CLK, Inc.,* 1994 WL 233954 at *4 (Del.Super.).

23. *See e.g. State v. Black,* 83 A.2d 678 (Del.Super.Ct.1951); *Realty Growth Investors v. Council of Unit Owners,* 453 A.2d 450, 454 (Del.1982) ("A contract can be created by reference to the terms of another instrument if a reading of all documents together gives evidence of the parties' intention and the other terms are clearly identified.") (citations omitted); *Lipson v. Anesthesia Services, P.A.,* 790 A.2d 1261, 1278 (Del.Super.Ct.2001).

penses will be allocated to CGU as if each of Pfizer and Quigley's insurers had agreed to make Liability Payments and pay Allocated Expenses under the terms of the Wellington Agreement, and accordingly, (b) CGU will have no obligation to pay any amounts pursuant to Section XX of the Wellington Agreement in lieu of an insurer that either is not a Signatory to the Wellington Agreement or subsequently becomes insolvent.

Section 1.0 of the Settlement Agreement defines Asbestos–Related Bodily Injury Claims as:

> "Asbestos–Related Bodily Injury Claims" mean claims or lawsuits for which Pfizer or Quigley is alleged to be or may be responsible by judgment, order or settlement (including but not limited to the Wellington Agreement, the Producer Agreement Concerning Center for Claims Resolution dated September 28, 1988, as amended, and the CCR Defendants' Sharing Agreement Concerning That Stipulation of Settlement Between the Class of Claimants and Defendants Represented by the Center For Claims Resolution dated January 15, 1993, as amended), by whomever brought and in whatever procedural posture such claims or lawsuits may arise, seeking monetary relief (whether or not such relief is the only relief sought) for bodily injury, sickness, disease or death, alleged to have been caused in whole or in part by any asbestos, or asbestos-containing materials and/or product(s). Asbestos–Related Bodily Injury Claims do not include claims, lawsuits or demand solely for conspiracy or concert of action, willful breach of warranty or other intentional tort. Asbestos–Related Bodily Injury Claims do not include statutory claims for compensation by an employee against his employer (such claims being commonly called "workers' compensation claims").

CGU argues the terms of the Wellington Agreement expressly relieve them of liability for shares attributable to defaulting members of the CCR because it expressly relieves Pfizer/Quigley of liability for shares of defaulting members.[24] Specifically, Appendix A–1, section E of the Wellington Agreement reads:

> Nothing in the Agreement or this Appendix A–1 shall obligate a non-defaulting Subscribing Producer to make any payment on behalf of a Subscribing Producer who is in default in its obligations to make payments to the Facility under this Agreement or under the By-laws of the Facility, whether by virtue of insolvency, bankruptcy or otherwise.

Section 3.0 of the Settlement Agreement expressly states CGU will only be obligated to pay amounts to Pfizer/Quigley to the extent CGU would have been obligated to do so under the Wellington Agreement. Under the definition of Asbestos–Related Bodily Injury Claims in the Settlement Agreement, this includes amounts for which Pfizer/Quigley became liable under the Producer Agreement.[25] Section 3.3 of

---

24. *CGU Answering Brief,* at 19.

25. The definition of Asbestos–Related Bodily Injury Claims in section 1.0 of the Pfizer/Quigley/CGU settlement agreement includes amounts Pfizer/Quigley became liable for under the Producer Agreement. It reads in pertinent part:

"Asbestos–Related Bodily Injury Claims" mean claims or lawsuits for which Pfizer or Quigley is alleged to be or may be responsible by judgment, order or settlement (including but not limited to the Wellington Agreement, the Producer Agreement Concerning Center for Claims Resolution dated September 28, 1988, as amended, and the CCR Defendants' Sharing Agreement Con-

the Settlement Agreement states any language therein that conflicts with language in the Wellington Agreement shall govern the relationship of the parties. Section E of the Wellington Agreement is applicable because no language in the Settlement Agreement conflicts with it. There is no language in the Settlement Agreement that expressly provides Pfizer/Quigley or CGU will be liable for amounts of defaulting members of the CCR. Because there is no inconsistency between the language in section E of the Wellington Agreement and the language of the Settlement Agreement, section E must be given effect by the Court.

Pfizer/Quigley argues that because the Wellington Agreement was superceded by the Producer Agreement and was not in force when the parties executed the Settlement Agreement,[26] section E of Appendix A–1 of the Wellington Agreement could not have been incorporated by reference and does not affect the obligations of CGU to Pfizer/Quigley.[27] This argument is contradicted by the express terms of section 3.3, excerpted above, which expressly incorporates all terms of the Wellington

Agreement into the Settlement Agreement. In addition, by Pfizer/Quigley's own admission, CGU was not a party to the Producer Agreement,[28] the Producer Agreement was not incorporated by reference into the Settlement Agreement and indeed, counsel for Pfizer/Quigley admitted at oral argument the Producer Agreement was not even attached to the Pfizer/Quigley/CGU settlement agreement.[29] Pfizer/Quigley has offered no rational basis why CGU should be limited by the terms of an agreement to which it was not a party.

Pfizer/Quigley further argues that only section 9, 10 and 11 of the Wellington Agreement were incorporated by reference into the Settlement Agreement.[30] Pfizer/Quigley offers no support for this argument in the Settlement Agreement or elsewhere in the record and this argument is contradicted by the express terms of the Settlement Agreement. The Court requested support for this argument in the record from counsel for Pfizer/Quigley at oral argument, but none was forthcoming.[31] As the Court has held, the Settle-

cerning That Stipulation of Settlement Between the Class of Claimants and Defendants Represented by the Center For Claims Resolution dated January 15, 1993, as amended)

26. *Pfizer/Quigley Reply Brief*, 10.

27. *Summary Judgment Hearing Transcript* at 17:

    Mr. Packman: Appendix A1 died when the ACF ceased operations in 1988 ... Appendix A1 was superceded by something called the Producer Agreement.

28. *Summary Judgment Hearing Transcript* at 18:

    The Court: Was CGU a party to the Producer Agreement?

    Mr. Packman: No. The Producer Agreement was signed solely by the producer companies, Pfizer, Quigley and the others, that had agreed to join the CCR.

29. *Summary Judgment Hearing Transcript* at 17.

30. *Summary Judgment Hearing Transcript* at 19.

31. *Summary Judgment Hearing Transcript* at 19–20:

    The Court: Is there language in the agreement between you and CGU that defines the limited purpose for which the Wellington Agreement was attached? ...

    Mr. Packman: No. I didn't take it as such. I don't recall off the top of my head, but I'm informed that CGU has admitted in its requests for admissions that it had the producer agreement before the bilateral agreement was signed. That's an admission in CGU's responses to Pfizer and Quigley's requests for admissions. And so they've admitted they have a producer agreement before the bilateral settlement

ment Agreement is a fully integrated document, and as there is no such limiting provision, the Court cannot accept that argument.

The Producer Agreement governed the liability of Pfizer/Quigley resulting from the defaulting members of the CCR, but it did not govern the liability of CGU. The Producer Agreement contained no clause like section E of the Wellington Agreement that limited the liability of remaining members for the shares of defaulting members. The Settlement Agreement governs the liability of CGU, and the Wellington Agreement, incorporated by reference, expressly provides remaining members shall not be liable for defaulting members' shares.

The Producer Agreement resulted in the joint and several liability of Pfizer/Quigley for which it seeks remuneration from CGU in this action. However, the Pfizer/Quigley/CGU Settlement Agreement governs the liability of CGU, not the Producer Agreement. From the clear terms of the Settlement Agreement, CGU is only obligated to pay Pfizer/Quigley to the extent it would have been under the terms of the Wellington Agreement. The Wellington Agreement expressly relieves Pfizer/Quigley from liability for the precise type of recovery they seek to recover from CGU in this case: defaulting members' shares. Therefore, CGU is not obligated to pay these amounts. Any other conclusion would require the Court to ignore section E of the Wellington Agreement.

It appears all amounts at issue in the instant action arise out of settlements that were agreed to with tort claimants, and were then re-negotiated when defaulting members of the CCR failed to pay. To the extent Pfizer/Quigley re-negotiated payment amounts with tort claimants to assume the liability of defaulting members of the CCR, those amounts may not be recovered from CGU because section E of Wellington expressly requires such a result. To the extent any amounts for which Pfizer/Quigley became liable to tort claimants was an original amount, and not re-negotiated to assume the liability of defaulting members of the CCR, CGU is responsible for paying those amounts to Pfizer/Quigley because section 2.1 of the Settlement Agreement expressly gave Pfizer/Quigley the authority to administer any claims in the first instance for which it was possibly liable:

> Pfizer and Quigley, or their designees, have the exclusive authority and discretion to administer, evaluate, settle, pay or defend all Asbestos–Related Bodily Injury Claims.

Pfizer/Quigley also argues that CGU waived virtually all their coverage defenses in the Settlement Agreement.[32] While that may be true, the Court does not find the argument persuasive, as Pfizer/Quigley has not cited to anything that precludes CGU from benefiting from the terms of the Settlement Agreement.

### Conclusion

As stated above, "[T]he Court may award summary judgment in favor of a nonmoving party if it finds that the material facts are undisputed and that the nonmoving party is entitled to judgment as a matter of law."[33] Although CGU has not cross-moved for summary judgment, the Court finds no issues of material fact remain to be determined. The terms of the Settlement Agreement govern the relationship of the parties and they are plain and

---

agreement was behind [sic] (signed), and that Attachment A was a part of that.

**32.** *Pfizer/Quigley Opening Brief* at 11–12.

**33.** *Gutridge v. Iffland,* 889 A.2d 283 (Del. 2005).

unambiguous. Therefore, summary judgment in favor of CGU is hereby GRANTED. For the reasons set forth herein the Motion for Summary Judgment is hereby DENIED at to Pfizer/Quigley and GRANTED as to CGU.

**IT IS SO ORDERED.**